IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02411-REB-CBS

KIRBY MARTENSEN,
    Plaintiff,
v.

WILLIAM KOCH,
DOES 6-25,
    Defendants.

---

RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS

---

Magistrate Judge Shaffer

This matter comes before the court on Defendant William Koch's Motion to Dismiss Plaintiff's Fourth Amended Complaint and to Strike Portions of the Fourth Amended Complaint (doc. #116), filed on April 11, 2014. This motion was referred to the Magistrate Judge pursuant to the Order of Reference dated April 15, 2014 (doc. #120). This court has carefully considered the motion and related briefing, the entire case file, the comments offered by the parties during the October 23, 2013 Scheduling Conference, and various motion hearings, discovery conferences, and status conferences, and applicable case law. For the following reasons, I recommend that the Motion to Dismiss be granted with prejudice and the Motion to Strike certain allegations be denied as moot.

**PROCEDURAL BACKGROUND**

On October 11, 2012, Plaintiff Kirby Martensen filed a lawsuit against Defendant Koch and unnamed parties in the United States Court for the Northern District of California claiming false imprisonment, civil conspiracy, and conspiracy under 42 U.S.C. § 1983 (doc. #1-1). Defendant Koch moved to dismiss the Complaint for lack of personal jurisdiction, failure to state

1

a claim, and improper venue, and asked in the alternative that the Northern District of California transfer the case to the District of Colorado. The court granted Defendant's Motion to Dismiss with leave to amend, noting that Plaintiff had requested such leave and that amendment would not necessarily be futile (doc. #1-42). Plaintiff subsequently filed a First Amended Complaint, and Defendant again moved to dismiss or transfer. On April 30, 2013, the court granted Defendant's Motion to Dismiss the First Amended Complaint without prejudice as to the claim for conspiracy under § 1983; and denied the motion as to the false imprisonment claim, civil conspiracy claim, the personal jurisdiction argument, and the improper venue argument (doc. #1-58). The court also declined to transfer the case.

Defendant filed an Answer to the First Amended Complaint on May 28, 2013 (doc. #5). Defendant thereafter filed a Motion for Partial Reconsideration of the April 30 order on the basis that new factual evidence implicated issues of specific jurisdiction and venue (doc. #1-85). Defendant argued that Plaintiff's deposition testimony in *Oxbow Carbon, LLC et al. v. Martensen et al.*, Case No. 502012CA005386, established that the alleged false imprisonment occurred entirely in Colorado. Prior to a hearing on Defendant's Motion for Partial Reconsideration, Plaintiff moved to amend his complaint to include a claim for intentional infliction of emotional distress. On September 3, 2013, the court denied Defendant's Motion for Partial Reconsideration, noting that while Plaintiff's deposition testimony contradicted his allegations that he had been falsely imprisoned in the forum, it did not impact the court's conclusion regarding personal jurisdiction. *See* Order Granting in Part Defendant's Motion for Reconsideration, *Martensen v. Koch*, No. C-12-cv-05257-JSC (N.D. Cal. Sept. 3, 2013), ECF No. 82. Notwithstanding this finding, the court determined the deposition testimony affected its analysis as to whether transfer of venue was appropriate, which the court had previously noted

2

was a "close call," and granted Defendant's motion to transfer the case to the District of Colorado without addressing Plaintiff's motion to file a Second Amended Complaint. *Id.*

On September 26, 2013, pursuant to this court's minute order (doc. #15), Defendant filed an Opposition to Plaintiff's Motion to Amend (doc. #21). Plaintiff filed a Reply on October 10, 2013 with accompanying exhibits (doc. #24). This court granted Plaintiff's Motion to Amend at the October 23, 2013 Scheduling Conference (doc. #28), and Plaintiff filed his Second Amended Complaint later that day (doc. #38). On November 6, 2013, Defendant filed a Motion to Dismiss the intentional infliction of emotional distress claim in Plaintiff's Second Amended Complaint (doc. #36). Plaintiff filed his Response to Defendant's Motion to Dismiss on November 27, 2013 (doc. #50), and Defendant filed his Reply on December 16, 2013 (doc. #52).

Plaintiff requested leave to file a Third Amended Complaint on December 24, 2013 (doc. #53), which this court denied without prejudice on December 26, 2013 for failure to comply with Local Rule 7.1(a). (doc. #55). Plaintiff filed a second motion seeking leave to amend later in the day on December 26 (doc. #56). The proposed Third Amended Complaint added a claim for defamation as to Defendant Koch and replaced Does 1-5 with Oxbow Carbon, OCM, OCM International, Michael McAuliffe, and Richard Callahan.[1] The proposed Third Amended Complaint also included new allegations related to Plaintiff's claim that Defendant Koch and various agents conspired to imprison Plaintiff and cause Plaintiff emotional distress. Defendant filed a notice on December 27, 2013 (doc. #58) arguing that Plaintiff had still not complied with Local Rule 7.1(a), and filed an Opposition to the December 26 Motion to Amend on January 6, 2013 (doc. #63). Defendant then filed a motion on December 31, 2013 asking this court to restrict the December 24 and 26 motions under Local Rule 7.2 (doc. #60). Plaintiff opposed Defendant's Motion to Restrict on January 3, 2014 (doc. #62).

---

[1] Mr. McAuliffe and Mr. Callahan worked as counsel for Oxbow during the time in question.

This court held a motion hearing on January 7, 2014, at which the undersigned granted Plaintiff's Motion for Leave to file a Third Amended Complaint, denied Defendant's Motion to Restrict the December 24 and 26 motions, and denied Defendant's pending Motion to Dismiss without prejudice as moot (doc. #65). At that time, this court also set a briefing schedule for Defendants' Motion to Dismiss the Third Amended Complaint; designated January 17, 2014 as the date by which the parties must submit a status report; designated January 22, 2014 as the date for a status conference; and designated January 24, 2014 as the date for a hearing on Defendants' Motion to Dismiss. Finally, this court stayed discovery pending the January 22 Status Conference.

Defendants filed a Motion to Dismiss the Third Amended Complaint on January 21, 2014 (doc. #72). Plaintiff filed a Response to Defendants' Motion to Dismiss the Third Amended Complaint on February 11, 2014 (doc. #85), and Defendants filed their Reply on February 16, 2014 (doc. #87). On February 26, 2014, Plaintiff filed a notice of voluntary dismissal as to Defendants McAuliffe and Callahan (doc. #91), and District Judge Robert E. Blackburn entered an Order of Dismissal as to those defendants the same day (doc. #94).

On February 28, 2014, Plaintiff sought leave to file a Fourth Amended Complaint (doc. #95). This court held a telephonic discovery hearing on March 25, 2014, at which the parties proposed that Plaintiff would dismiss all Defendants except for Mr. Koch in exchange for an expedited briefing schedule on any objections to Plaintiff's deposition subpoenas (doc. #105). At the telephonic status conference held on March 28, 2014, the parties informed this court that they wished to proceed with the proposed agreement, and that counsel for Defendants would accept service of the subpoenas on behalf of the witnesses and file any objections to the subpoenas by April 11, 2014. During this conference, the undersigned ordered the parties to file

a stipulated Motion to Dismiss the Oxbow Defendants with prejudice by March 31, 2014, ordered Plaintiff to file his Fourth Amended Complaint by April 11, 2014, and denied as moot Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint and Plaintiff's Motion for Leave to File a Fourth Amended Complaint. (Doc. #106).

On March 31, 2014, Plaintiff filed the stipulated Motion to Dismiss (doc. #107). On April 1, 2014, Judge Blackburn entered an Order of Dismissal as to the Oxbow Defendants (doc. #110). Later that day, Plaintiff filed his Fourth Amended Complaint asserting claims for false imprisonment, intentional infliction of emotional distress, and civil conspiracy (doc. #111). On April 11, 2014, Defendant Koch filed a Motion to Dismiss the civil conspiracy and intentional infliction of emotional distress claims and to Strike Portions of the Fourth Amended Complaint (doc. #116). On April 18, 2014, Plaintiff filed a Response to Defendant's Motion to Dismiss (doc. #122). Defendant filed a Reply in support of his Motion to Dismiss the Fourth Amended Complaint on April 24, 2014 (doc. #126).

## FACTUAL ALLEGATIONS

Plaintiff alleges the following facts in his Fourth Amended Complaint. Prior to March 22, 2012, Plaintiff was employed by companies owned and/or controlled by Defendant Koch, including Oxbow Carbon, LLC ("Oxbow Carbon"), Oxbow Carbon & Minerals, LLC ("OCM"), and Oxbow Carbon & Minerals International, GmbH ("OCM International") (collectively "Oxbow"). Defendant is the founder, chairman, and majority owner of Oxbow. These privately held entities sell millions of metric tons of petroleum coke and steam coal throughout the world. In 2008, Plaintiff considered leaving Oxbow to collaborate with several businessmen in creating a business venture that would compete with Oxbow. Plaintiff and his associates abandoned their plan following consultation with a tax attorney regarding the tax liability for a petroleum coke

trading company. In 2010, Oxbow underwent a structural reorganization that Plaintiff believed was part of a scheme to evade paying taxes to the United States on annual profits in excess of $200,000,000. (*See* doc. #111 at pp. 4-6). In late 2011, Plaintiff was promoted to the position of Senior Vice President-Asia with OCM International. The promotion required that he and his family relocate to the company's Singapore office, but included a 40 percent salary increase, reimbursement for relocation expenses, and a stipend for living expenses. Plaintiff understood that his assignment in Singapore was related to the company's restructure.

Defendant Koch received an anonymous letter in early 2011, implicating Plaintiff and another employee in theft, breaches of fiduciary duty, fraud, and self-dealing against Oxbow. Based on this letter, Defendant engaged the consulting firm Grant Thornton to conduct a comprehensive forensic review of thousands of documents, including letters, memoranda, and electronic corporate communications of Plaintiff and several other employees. Defendant learned through this review that Plaintiff and others had expressed concern over the legality of the company's tax strategy following the reorganization, and distrust of Oxbow upper management. Plaintiff alleges that as a result of the review, Defendant purposefully promoted then terminated Plaintiff with the intention of intimidating him, discrediting him, and ultimately chilling his speech. (*See* doc. #111 at pp. 9-10, 12).

In early 2012, Defendant directed Plaintiff and other executives of OCM International to attend a meeting at his property known as Bear Ranch, ostensibly to congratulate and award the employees for their performance. Bear Ranch is located in a remote corner of Gunnison County, Colorado, approximately seventy miles from Aspen, Colorado, and is accessible only through a guarded, private road owned and maintained by Defendant. The conference was scheduled for March 21 and March 22, 2012. On the morning of March 21, 2012, Plaintiff flew from San

Francisco to Aspen where Defendant met and drove him along with others to Bear Ranch.  Upon arriving, the guests learned that cellular service and internet access were not available at the ranch.  On the morning of March 22, 2012, the guests attended a business meeting, toured a replica of a late 19th century Western town on the ranch, and participated in a helicopter tour of the property.  After lunch, Defendant informed Plaintiff and others that a compensation specialist would conduct interviews as part of a "360 degree peer review."  Defendant's agents interviewed Plaintiff in an office building in the Western town for several hours, during which they accused Plaintiff of endeavoring to defraud Defendant and Oxbow, accepting bribes, and aiding competitors of Oxbow.  (*See* doc. #111 at pp. 15-16).  Plaintiff learned that Defendant knew of his aborted plan to leave Oxbow International and form a competitor company, and that Defendant believed Plaintiff had colluded with a competitor.  (*See id.* at p. 16).

After the interview concluded at approximately 5:00 p.m., Defendant's agents escorted Plaintiff to a sports utility vehicle and instructed him to sit in the backseat.  The vehicle stopped at the perimeter of the Western town to allow another agent to serve Plaintiff with termination papers and a lawsuit, *Oxbow Carbon, LLC et al. v. Martensen et al.*, Case No. 502012CA005386, that had been filed in Circuit Court, Palm Beach County, Florida that morning.  The driver of the vehicle drove Plaintiff to the main guesthouse to collect his luggage and told Plaintiff he would be driven to Aspen.  Defendant's agents then searched Plaintiff's belongings while he packed.  Plaintiff was again escorted to the sports utility vehicle and driven to a cabin elsewhere on the ranch where he was told to wait.  The driver who escorted Plaintiff into the cabin explained, "A sheriff is here to make sure you don't wander off" (doc. #111 at p. 17), and Plaintiff could see a uniformed police officer in a parked patrol car from the cabin room in which he waited.  Plaintiff spent three hours in the cabin before Defendant's agents escorted

7

him back to the sports utility vehicle. Plaintiff was instructed to sit in the back of the vehicle along with a former co-worker, Wenming "Charlie" Zhan. The two agents sitting in the front seats of the vehicle advised Plaintiff and Zhan that they would be driven to the airport. Plaintiff asked the driver to take him to the airport in Aspen where he was scheduled to board a flight the following morning. The driver refused and drove Plaintiff and Zhan to a private airport outside of Denver. (*See* doc. #111 at pp. 18-19). The trip lasted five hours, and the vehicle arrived at the airport at approximately 2:00 a.m. on the morning of March 23. The agents then ordered Plaintiff and Zhan to board a private plane that was owned by Defendant and Oxbow. A pilot, co-pilot, and escort were waiting on the plane for Plaintiff and Zhan. The escort was a retired Florida police officer whom Plaintiff believed was armed with a weapon. (*See* doc. #111 at p. 20). The private plane arrived at an airport in Oakland, California at approximately 4:00 a.m. on the morning of March 23. One of the agents instructed Plaintiff to ride in a vehicle that would take him to a nearby hotel. Plaintiff refused the directive and hailed a taxi to drive him to his home in Berkeley, California.

## STANDARD OF REVIEW

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As the United States Tenth Circuit Court of Appeals explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

**A.    Civil Conspiracy**

Plaintiff alleges that Defendant Koch, Richard J. Elroy,[2] Mr. McAuliffe, Mr. Callahan, and several other agents and employees of Oxbow conspired to relocate Plaintiff to Singapore, and falsely imprison him at Bear Ranch. Defendant argues that the intracorporate conspiracy doctrine bars any claim for civil conspiracy, and furthermore, that Plaintiff fails to allege the specific roles and actions taken by Defendant.

---

[2] Plaintiff refers to Mr. Elroy in the Fourth Amended Complaint as having been employed by Defendant and Oxbow for twenty years (*see* doc. #111 at p. 15), and claims in his Response to Defendant's Motion to Dismiss that Mr. Elroy is not an employee but an independent contractor (*see* doc. #122 at p. 4). This distinction is one without a difference for the purposes of this recommendation. *See Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1360 (10th Cir. 1987) ("the terms 'agents' and 'independent contractor' are not necessarily mutually exclusive") (citing *Milligan v. Anderson,* 522 F.2d 1202, 1207 (10th Cir.1975)).

A civil conspiracy requires: "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 51 (10th Cir. 1963) (quoting *Lockwood Grader Corp. v. Bockhaus*, 129 Colo. 339, 345-46 (1954)). A corporation and its employees do not constitute the "two or more persons" required for a conspiracy. *See Zelinger*, 316 F.2d at 52 (internal citations omitted). However, under Colorado law, a corporation and its employees can engage in a civil conspiracy if employees are acting as individuals for their individual advantage. *See Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119, 1129-30 (10th Cir. 1994) (citing *Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1390 (Colo. App. 1986)).

Plaintiff does not dispute that Defendant Koch's alleged co-conspirators are employees or agents of Oxbow; rather, Plaintiff relies on *Brever* to argue that Defendant acted with these employees and agents out of an individual interest separate from that of the corporation. In *Brever*, two female employees were harassed and intimidated by co-workers and management at a plutonium plant after cooperating with an FBI investigation and testifying before a grand jury regarding the illegal operation of an incinerator. The Tenth Circuit determined that the intracorporate conspiracy doctrine does not extend to civil rights actions, and furthermore, an exception to the doctrine applies when employees hold "an independent personal stake in achieving the corporation's illegal objective." *Brever*, 40 F.3d at 1127 (quoting *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985)) (further internal quotations and citations omitted). Of the approximately twenty employees named in *Brever*, several were aware that plaintiffs had identified them in testimony before the grand jury and others had threatened plaintiffs with injury should the plant close and result in a loss of jobs.

10

Plaintiff argues that the facts in *Brever* are analogous to the facts presented in this lawsuit. Plaintiff is mistaken. Plaintiff claims that Defendant and Oxbow employees conspired to relocate him to Singapore in order to intimidate and chill his speech knowing that he had expressed concern and skepticism regarding Oxbow's tax strategy. For support, Plaintiff alleges only that the "Oxbow agents and employees who participated in creating and implementing the alleged unlawful tax evasion plan would have a personal stake in seeking to deter and intimidate [Plaintiff] from implicating employees in a criminal activity." (Doc. #122 at p. 6). However, Plaintiff had not implicated Defendant, Oxbow, or any of its employees in criminal activity at the time of his promotion and subsequent relocation. Plaintiff moved to Singapore in December 2011, visited Bear Ranch in March 2012, and filed this lawsuit in October 2012. Plaintiff did not file his IRS Whistleblower Claim Form 211 until May 2013 (*see* doc. #111 at p. 23), and has not alleged taking any other action that would have implicated Oxbow employees in tax fraud. The Plaintiffs in *Brever* participated in the FBI investigation, implicated certain co-workers before the grand jury, and were subjected to specific retaliatory conduct before they filed their lawsuit. Plaintiff has not identified specific employees, other than Mr. Callahan, who conspired to send him to Singapore for the purpose of intimidation or retaliation; and Plaintiff's allegations regarding Mr. Callahan's participation in plans to relocate him indicate at best that Mr. Callahan was following corporate orders.

Plaintiff also alleges that Mr. Elroy, Mr. McAuliffe, Mr. Callahan, and other Oxbow agents and employees conspired with Defendant Koch to falsely imprison Plaintiff at Bear Ranch during the weekend of March 21-23, 2012 to "discredit, demoralize and deter Plaintiff from acting as a witness and/or IRS whistleblower…" (Doc. #122). Again, the events at Bear Ranch occurred more than a year before Plaintiff filed his Whistleblower Claim, and Plaintiff provides

no other facts that plausibly suggest another reason why Defendant and his agents or employees conspired to falsely imprison him. Plaintiff has not shown that Defendant or any corporate representative "act[ed] in [his] personal interests, wholly and separately from the corporation," (*Rodriguez v. City of New York*, 644 F.Supp.2d 168, 201 (E.D.N.Y. 2008)). To the contrary, Plaintiff's allegations indicate that Mr. Elroy, Mr. McAuliffe, Mr. Callahan, and others acted in concert with Defendant Koch for the sole reason that they were Oxbow employees.

Plaintiff argues in his Response that Grant Thornton employees participated in the planning and execution of the events at Bear Ranch and that their participation renders the intracorporate conspiracy doctrine inapplicable. Plaintiff did not allege these facts in his Fourth Amended Complaint, but that omission does not change this court's analysis. Oxbow enlisted the services of Grant Thornton. Whatever involvement Grant Thornton's employees had with the events at Bear Ranch would have been pursuant to their agency relationship with Oxbow,[3] and agents cannot conspire with the corporation they represent. *Johnson v. Boulder Co.*, No. 04-cv-00245-RPM, 2006 WL 2246397, at *4 (D. Colo. August 4, 2006) ("[I]t is recognized law that a governmental entity, like a corporation, cannot conspire with itself and that the agents and employees of the entity acting within the scope of their duties on behalf of that entity are not conspirators") (internal citations omitted).

In addition to Plaintiff's failure to allege a conspiracy of two or more persons, he has not provided specific allegations regarding the meeting of the minds amongst conspirators or actions taken by Defendant. Plaintiff must present evidence of an agreement; the court may not infer its existence. *Harris v. Amerigas Propane, Inc.*, No. 12-cv-00860-RBJ-MEH, 2012 WL 7051302, at *6 (D. Colo. Dec. 5, 2012) (citing *Nelson v. Elway*, 908 P.2d 102, 106 (Colo.1995)). "[T]he

---

[3] *See* Restatement (Third) of Agency § 1.01, cmt. c. (2006) (Explaining that to form an agency relationship within the common-law definition the agent must "consent to act on behalf of the principal, and the principal has the right throughout the duration of the relationship to control the agent's acts.").

nature of conspiracies often makes it impossible to provide details at the pleading stage and…the pleader should be allowed to resort to the discovery process and not be subject to dismissal of the Complaint." *Brever*, 40 F.3d at 1126 (citing 5 C. Wright & A. Miller, *Federal Practice & Procedure,* § 1233, at 257 (2d ed. 1990)). However, Plaintiff has amended his complaint four times over a span of eighteen months. Plaintiff's civil conspiracy claim as stated in his First Amended Complaint survived a motion to dismiss in the Northern District of California in part because Defendant had not yet argued for the application of the intracorporate conspiracy doctrine, and the court found that the complaint raised "a reasonable expectation that discovery will reveal evidence of the illegal agreement." (*See* doc. #1-45 and #1-58). Now, despite numerous opportunities to amend and many depositions, Plaintiff has not illuminated the specifics of the illegal agreement or moved to amend his complaint to add specific actions taken by Defendant.

Finally, the elements of a civil conspiracy claim require that the underlying acts be unlawful and create an independent cause of action. *See Sterenbuch v. Goss*, 266 P.3d 428, 436 (Colo. App. 2011); *see also AKC ex rel. Carroll v. Lawton Independent School Dist. No. 8*, --- F.Supp.2d ----, 2014 WL 1271218, at *3 (W.D. Okla. March 26, 2014) ("[I]n order for a civil conspiracy claim to lie, it must be based on an underlying tort."). In addition, civil conspiracy claims share a statute of limitations with the underlying tort, and the accrual date is linked to the accrual dates of the underlying torts. *See Sterenbuch*, 266 P.3d at 436. Plaintiff alleges Defendant and others conspired to intimidate him in violation of 18 U.S.C. §§ 371 and 1512(b)(1) by moving him to Singapore. However, the cited statutes are criminal statutes and they do not provide for private civil causes of action. *Chrysler Corp. v. Brown,* 441 U.S. 281, 316 (1979) (noting that the Supreme Court has rarely implied a private right of action under a

13

criminal statute); *see also In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d 781, 789-90 (3d Cir. 1999) ("A claim of civil conspiracy cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action.") (internal citations omitted). Plaintiff, as a private party, cannot state a claim for civil conspiracy, even with further amendment, where the underlying violation does not create a cause of action.

For these reasons, this court recommends granting Defendant's Motion to Dismiss with prejudice as to Plaintiff's claim for civil conspiracy. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("the district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint.") (internal citations omitted).

**B.     Intentional Infliction of Emotional Distress**

Plaintiff claims that Defendant, Mr. Elroy, and agents and employees of Oxbow intentionally inflicted emotional distress on him in a variety of ways related to his employment with Oxbow and the false imprisonment at Bear Ranch. Defendant argues that Plaintiff has not sufficiently alleged the elements of the tort. This court agrees.

Intentional infliction of emotional distress requires that Plaintiff plead three elements: "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000), *cert. denied* (Jan. 2001). In Colorado, intentional infliction of emotional distress may be found only where "the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir.

1988), *cert. denied*, 489 U.S. 1080 (1989) (quoting *Rugg v. McCarty*, 173 Colo. 170, 177 (1970)). The tort of intentional infliction of emotional distress "contemplates an extreme level of independently ascertainable misconduct from which the 'ineluctable conclusion' is the calculated or reckless infliction of severe mental suffering." *Visor v. Sprint/United Management Co.*, 965 F.Supp. 31, 33 (D. Colo. 1997) (quoting *Gard v. Teletronics Pacing Sys., Inc.*, 859 F.Supp. 1349, 1354 (D. Colo. 1994)). "While the jury determines the ultimate question of whether conduct is outrageous, the court must decide in the first instance whether reasonable persons could differ on the conduct being outrageous." *Donaldson v. American Banco Corp. Inc.*, 954 F.Supp. 1456, 1465-66 (D. Colo. 1996) (citing *Rugg*, 476 P.2d at 754).

Plaintiff alleges that Defendant and non-parties relocated him and his family to Singapore intending to terminate him shortly thereafter for the purpose of intimidating him and discouraging him from alerting the authorities to the company's tax fraud. Plaintiff alleges that Defendant caused him further distress by failing to pay a $1.1 million bonus and reimburse his family's expenses incurred in returning to California, both of which were terms of the promotion. Plaintiff's allegations, taken as true, do not demonstrate extreme and outrageous conduct. First, he was incentivized to move to Singapore by a 40 percent increase in his salary, a $1.1 million bonus, a generous living stipend, and tuition for his sons' private school. Second, in Colorado, the discharge from employment, without more, is not outrageous conduct. *Grandchamp*, 854 F.2d at 384. "The termination must be combined with other wrongful behavior, such as a physical assault, or extreme harassment, ridicule, and humiliation to constitute an arguable claim of outrageous conduct." *LaBrecque v. L3 Communication Titan Corp.*, No. 05-cv-00642-REB-MJW, 2007 WL 1455850, at *5 (D. Colo. May 16, 2007) (internal citations omitted). Nor does Colorado law recognize retaliation for whistleblowing in and of itself as giving rise to the

intentional infliction of emotional distress. *See Ayon v. Kent Denver School*, No. 12-cv-2546-WJM-CBA, 2013 WL 1786978 (D. Colo. April 26, 2013). Moreover, Plaintiff was not yet a "whistleblower" when he was promoted and relocated. That Plaintiff's employment was terminated soon after moving to Singapore, or that Oxbow breached the employment contract, is not "so extreme in degree as to go beyond all possible bounds of decency." *See Katz v. City of Aurora*, 85 F.Supp.2d 1012, 1021 (D. Colo. 2000) ("A mere allegation by an employee that he was dismissed or demoted wrongfully, summarily, or in violation of the employer's policies or procedures fails to state a claim for intentional infliction of emotional distress") (citing *Bellairs v. Coors Brewing Co.*, 907 F.Supp. 1448, 1459 (D. Colo. 1995), *aff'd,* 107 F.3d 880 (10th Cir. 1997).

Plaintiff also alleges that Defendant and non-parties falsely imprisoned him at Bear Ranch and named him in a frivolous lawsuit in Palm Beach Circuit Court for the purpose of causing him emotional distress. Accepting Plaintiff's allegations as true, he was confined between early afternoon March 22, 2012 and early morning March 23, 2012, at a remote ranch in central Colorado and driven against his will to an airport outside of Denver, where he was escorted onto a private plane and flown to Oakland, California instead of his original destination of San Francisco. While such conduct may well be tortious, it does not rise to the level of outrageous conduct. The level of outrageousness necessary to satisfy the first element of the tort of intentional infliction of emotional distress is "extremely high." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002). The "defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp*, 854 F.2d at 383. Conduct deemed sufficiently outrageous by Colorado courts includes allegations that a defendant Catholic priest, acting as a marriage counselor, engaged in sexual

16

relations with a married woman who sought marriage counseling from him (*Destefano v. Grabrian,* 763 P.2d 275 (Colo. 1988)); an unlicensed psychologist reporting that plaintiff had sexually abused his children, despite significant evidence to the contrary (*Montoya ex rel. Montoya v. Bebensee,* 761 P.2d 285 (Colo. App. 1988)); and defendants who refused ambulance service to plaintiff's critically ill wife, causing her death (*DeCicco v. Trinidad Area Health Ass'n.,* 573 P.2d 559 (Colo. App. 1977)). Plaintiff's allegations are not nearly as egregious as the conduct alleged in these cases.

Furthermore, the filing of a frivolous lawsuit does not necessarily constitute outrageous conduct. *See Lewis v. Strong*, 09-cv-02861-REB-KMT, 2010 WL 2232359, at *4 (D. Colo. June 2, 2010); *see also Harrison v. Luse*, 760 F.Supp. 1394, 1402 (D. Colo. 1991) (allegations that defendant filed a lawsuit for the purpose of harassing, embarrassing, inconveniencing, and intimidating the plaintiff did not reach "the threshold level of conduct necessary to support a claim for outrageous conduct."). Plaintiff has provided no allegations regarding the Florida lawsuit other than to say it was "frivolous, vexatious and defamatory," and filed to "intimidate, bankrupt and silence [Plaintiff]." (Doc. #111).

Finally, Plaintiff has not articulated a manifestation of severe mental suffering. Plaintiff alleges only that Defendant and Oxbow agents and employees caused him to suffer "from anxiety and depression impacting his ability to sleep and other major life activities." (Doc. #111). Such allegations are general and conclusory. Plaintiff does not allege when he began to suffer anxiety or depression, when he ceased to sleep, when the consequences of these events impacted him, or how he was impacted. However, even more specific allegations of these maladies likely would not suffice for a finding of liability. *Compare Patterson v. City of Wichita, Kan.*, NO. 12-CV-1308-JAR, 2014 WL 2533180, at *11 (D. Kan. June 5, 2014) ("There

17

is no laundry list of what qualifies as the requisite level of severity [of emotional distress].... [I]t is fair to say that headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice anywhere.") (quoting Boston, Kline, & Brown, Emotional Injuries: Law and Practice § 22:7 (1998)), *with Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1181-82 (10th Cir. 2013) (holding a material issue of fact existed where Plaintiff filed an affidavit detailing his physical condition prior to defendant's negative credit reporting and detailed the exacerbated symptoms of his depression, anxiety, and Chron's Disease following the negative reporting, which he supported with medical records).

Reasonable people could not differ on the question of whether Defendant's conduct was outrageous.[4]  Furthermore, Colorado law provides a two-year statute of limitations for a claim for the intentional infliction of emotional distress. C.R.S. § 13–80–102(a). A cause of action for intentional infliction of emotional distress accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." C.R.S. § 13–80–108(1). Plaintiff claims that he suffered severe emotional distress as a result of the false imprisonment that occurred in March 2012, and the financial burden incurred in relocating his family from Singapore to California shortly thereafter. Amendment to Plaintiff's claim for intentional infliction of emotional distress would be futile because the alleged tortious conduct occurred more than two years ago. Accordingly, this court recommends granting Defendant's Motion to Dismiss with prejudice as to this claim. *See Brereton*, 434 F.3d at 1219.

---

[4] In light of this recommendation, this court refrains from considering whether Plaintiff's claim for intentional infliction of emotional distress should have been raised in the Florida lawsuit as a compulsory counterclaim.

# CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendant's Motion to Dismiss (doc. #116) be GRANTED and Defendant's Request to Strike Portions of the Fourth Amended Complaint be DENIED as moot.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant

had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 12th day of June, 2014.

BY THE COURT:

s/Craig B. Shaffer_____
United States Magistrate Judge